UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
CINDAMANNIE TALIP,                          :
                                            :
                              Plaintiff,    :
                                            :          **OPINION AND ORDER**
              -against-                      :          12-CV-5238 (DLI)
                                            :
CAROLYN W. COLVIN,[1]                        :
Commissioner of Social Security,            :
                                            :
                              Defendant.    :
-----------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

On March 30, 2009, Plaintiff Cindamannie Talip ("Plaintiff") filed an application for
Social Security disability insurance benefits ("DIB") and for Supplemental Security Income
("SSI") under the Social Security Act (the "Act"), alleging disability due to bulging discs in her
spine, arising out of a March 31, 2008 work-related injury. (*See* Certified Administrative Record
("R."), Dkt. Entry No. 26 at 104-08, 116.) On June 11, 2009, these applications were denied and
Plaintiff requested a hearing. (R. 45-52.) On March 16, 2011, Plaintiff appeared with counsel
and testified at a hearing before Administrative Law Judge David Nisnewitz (the "ALJ"). (R.
29-44.) At the hearing, Plaintiff's counsel indicated that Plaintiff sought benefits for a closed
period of disability from March 31, 2008 to September 28, 2009, as Plaintiff returned to work on
September 29, 2009. (R. 32-33.) By a decision dated April 5, 2011, the ALJ concluded Plaintiff
was not disabled within the meaning of the Act. (R. 12-28.) On August 22, 2012, the ALJ's
decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's
request for review. (R. 1-5.)

---

[1]     Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Carolyn W. Colvin shall be
substituted for Commissioner Michael J. Astrue as the defendant in this action.

Plaintiff filed the instant appeal seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g). (*See* Complaint ("Compl."), Dkt. Entry No. 1.) The Commissioner moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking affirmance of the denial of benefits. (*See* Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Mem."), Dkt. Entry No. 21.) Plaintiff cross-moved for judgment on the pleadings, seeking reversal of the Commissioner's decision, or alternatively, remand. (*See* Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem."), Dkt. Entry No. 23.) For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted. Plaintiff's motion for judgment on the pleadings is denied and this appeal is dismissed.

## BACKGROUND

### A.     Non-Medical and Self-Reported Evidence

Plaintiff was born in 1969[2] in Guyana, where she attended school through twelfth grade, but did not graduate from high school. (R. 31, 33-35, 104, 112, 121.) She can read, speak, and write English. (R. 115.) From 2006 to March 31, 2008, Plaintiff worked at a nursing home as a nursing assistant. (R. 33, 117, 167.) The physical demands of this position required lifting in excess of 100 pounds. (R. 117.) On March 31, 2008, Plaintiff injured her back while attempting to lift a patient, after which she temporarily ceased working. (R. 32.) She returned to work in March 2009, but was terminated as she was unable to perform the physical demands of her position. (R. 32, 37, 116, 227.)

In her application for DIB and SSI benefits, Plaintiff claimed that she had been unable to work since March 31, 2008, due to bulging discs in her back, which in turn caused a number of

---

[2]       Plaintiff was forty-one years old at the time of her hearing. (R. 31.) Thus, Plaintiff was a "younger person" throughout the entire closed period for which she seeks benefits. 20 C.F.R. §§ 404.1563(c), 416.963(c).

complications, including numbness in her legs and toes, back pain, and stiffness. (R. 116.) In a questionnaire dated May 15, 2009, Plaintiff indicated that she suffered from pain when lifting, standing, walking, sitting, and kneeling. (R. 143, 147.) To reduce these symptoms, she wore a corset and used a heating pad. (R. 148.) She had difficulty getting dressed and washing her back and lower body. (R. 139-40.) She prepared simple meals such as sandwiches, but required assistance from family members if she was in too much pain. (R. 140.) Plaintiff was unable to perform household chores. (R. 141.) Plaintiff shopped by telephone or mail order catalogues. (R. 142.) Plaintiff was able to pay bills and handle her finances. (*Id.*) Plaintiff traveled to Virginia by car to visit her sister during her closed period of disability. (R. 40.)

At the hearing, Plaintiff testified that she lived with her husband and two children, ages twelve years and three months. (R. 31-32.) On September 29, 2009, Plaintiff began working as a companion to an elderly patient. (R. 32-33.) This position was primarily sedentary work as her patient was bedridden and fed through a feeding tube. (R. 39.)

**B.  Medical Evidence**

On April 1, 2008, Jatinder S. Bakshi, M.D., a neurologist, examined Plaintiff regarding her complaints of low back pain. (R. 178-80.) Dr. Bakshi noted "[s]evere paraspinal multiple areas of tenderness along the lumbar spine, especially at the lumbar L2-L5 level more so on both sides with paraspinal muscle spasm with restricted range of motion." (R. 179.) The range of motion for her lumbar spine was "severely restricted in all planes." (*Id.*) The straight leg raise test was negative. (*Id.*) Her deep tendon reflexes were at "2+" for biceps, triceps, brachioradialis, patella, and Achilles. (*Id.*) Her gait was normal. (*Id.*) He diagnosed her with lumbago and muscle spasm. (R. 180.) He recommended physical therapy, trigger point injection therapy, and refraining from strenuous physical activities. (*Id.*) He prescribed Flexiril. (*Id.*)

Her prognosis was guarded and Dr. Bakshi opined that Plaintiff was temporarily partially disabled. (*Id*.)

On May 2, 2008, Dr. Bakshi examined Plaintiff and noted "moderate improvement." (R. 174-75.) He opined that Plaintiff was totally disabled and recommended an MRI to rule out disc herniation and bulging. (R. 175.) On June 4, 2008, Plaintiff underwent an MRI which revealed a posterior bulge at the L4-L5 level into the epidural fat abutting the anterior sac margin. (R. 203.) On June 6, 2008, Dr. Bakshi examined Plaintiff, finding normal muscle tone and bulk, with no evidence of atrophy. (R. 207.) The range of motion for her lumbar spine was moderately to severely restricted on all planes and the straight leg test was positive at 30 degrees bilaterally. (*Id*.) Dr. Bakshi noted diminished sensation to light touch of the bilateral L5-S1 root distrubtion. (R. 208.) Dr. Bakshi diagnosed Plaintiff with lumbar disc bulge at L4-L5, myofascial pain syndrome, and muscle spasm. (*Id*.)

On July 8, 2008, Daniel Shapiro, M.D., a physiatrist, examined Plaintiff. (R. 176-77.) On examination, he noted moderate paraspinal tenderness along the lumbar spine, with muscle spasm, restricted range of motion on forward flexion, extension, and side-to-side bending. (R. 176.) The straight leg test was positive at 50 degrees on the right. (*Id*.) Her deep tendon reflexes were normal for all extremities and her gait was normal. (R. 177.) He noted that her prognosis was guarded and he opined that she was temporarily totally disabled. (*Id*.)

On July 10, 2008, Sanford R. Wert, M.D., submitted a report regarding his July 9, 2008 examination of Plaintiff, which was requested by her employer's workers' compensation insurance carrier. (R. 186-89.) At that examination, Plaintiff complained of severe lumbosacral spinal pain with radiating and cramping of the legs. (R. 187.) Plaintiff walked independently with normal gait. (*Id*.) On examination, he found no tenderness or muscle spasm of the

lumbosacral spine, and normal or slightly restricted ranges of motion. (R. 188.) He diagnosed Plaintiff with lumbosacral spine sprain and opined that Plaintiff was "capable of resuming full time normal employment with no restrictions or limitations." (*Id*.)

On September 18, 2008, Nadlini Paddu, M.D., a physiatrist associated with Dr. Shapiro, examined Plaintiff. (R. 196-97.) Plaintiff complained of lower back pain radiating to her lower extremities, but noted that she was improving with physical therapy. (R. 196.) On examination, Dr. Paddu found tenderness and muscle spasm of the lumbosacral spine, as well as moderate restriction of the range of motion. (*Id*.) Straight leg raising was positive at 20 degrees on the right and 30 degrees on the left. (*Id*.) Dr. Paddu also found diminished motor strength of her bilateral ankle dorsi flexors and toe extensors musculature. (*Id*.) Dr. Paddu opined that she was temporarily totally disabled. (R. 197.) Dr. Shapiro reported essentially the same findings and opinions after his October 7, November 20, and December 16, 2008 examinations of Plaintiff. (R. 194-95, 215-18.)

On October 22, 2008, Panagiotis Zenetos, M.D., examined Plaintiff. (R. 242-44.) Plaintiff complained of pain in her back, right buttock, right thigh, and right leg, as well as numbness and weakness. (R. 242.) She told him that she was unable to lift or carry anything, walk more than one-quarter of a mile, and sit or stand for more than 30 minutes. (*Id*.) Motor power was 4/5 in the triceps, triceps and shoulder adductors and abductors bilaterally, and the left foot inverters, everters, and dorsiflexors. (R. 243.) Her patellar reflexes were 2, with all other reflexes at 1. (*Id*.) Her lumbar ranges of motion were decreased. (*Id*.) Her straight leg test was abnormal with radiating pain at 50 degrees. (*Id*.) He diagnosed her with lumbosacral spondylosis without myelopathy, and cervical and lumbar radiculopathy. (*Id*.) Dr. Zenetos

scheduled Plaintiff for epidural steroid injections (*id*.), which he administered on November 19, 2008. (R. 244.)

On January 6, 2009, Dr. Shapiro examined Plaintiff, noted that she was "improving with physical therapy," and opined that she had a "permanent partial moderate disability." (R. 219-20.) On examination, he found tenderness and muscle spasm of the lumbosacral spine, moderate restriction of the range of motion for the lumbar spine, and diminished sensation to light touch in the right toe. (R. 219.) Dr. Shapiro reported essentially the same findings and opinions after his February 6, 2009 examination of Plaintiff. (R. 221-22.) Notably, he indicated that Plaintiff was a "good candidate for vocational rehabilitation. (R. 221.)

On February 26, 2009, A. Sohal, M.D., conducted an independent medical examination of Plaintiff in connection with her application for workers' compensation benefits. (R. 182-85.) On examination, Dr. Sohal found no tenderness or spasm in Plaintiff's cervical spine, normal range of motion, and full range of motion with normal sensory, motor and reflexes in Plaintiff's upper extremities. (R. 184.) He found that Plaintiff's lumbosacral spinal region showed tenderness with some spasm. (*Id*.) Straight leg raising in the supine position was barely 25 degrees bilaterally, and in the sitting position, 70 degrees. (*Id*.) Lumbar flexion was 30 degrees and extension was 10 degrees. (*Id*.) Her knee and ankle reflexes were 2/4. (*Id*.) Her gait was normal but slow. (*Id*.) He diagnosed her with lumbosacral sprain and strain, L4-L5 disc bulge, resolving. (*Id*.) On March 12, 2009, Dr. Sohal submitted an addendum to his February 26 report opining that Plaintiff suffered from a mild partial disability of the lumbar spine. (R. 181.)

On March 10, 2009, Dr. Shapiro examined Plaintiff. (R. 190-91.) Plaintiff complained of lower back pain radiating to her lower extremities, and numbness in her right toes, as well as mid-thoracic pain. (R. 190.) On examination, he found tenderness and muscle spasm of the

lumbosacral spine, as well as moderate restriction of the range of motion. (*Id*.) He also found tenderness to the thoracic lumbar spine with associated muscle weakness. (*Id*) He diagnosed her with lumbar disc bulge L4-L5 and muscle spasm. (R. 191.) He opined that Plaintiff had a partial moderate disability and recommended vocational rehabilitation. (R. 190.) On April 10, 2009, Dr. Shapiro examined Plaintiff and reported similar findings. (R. 198-99.) Notably, Dr. Shapiro opined that Plaintiff could return to light duty work on a part time basis. (R. 199.) Specifically, he noted that she could work four hours per day, two to three days per week, and was limited to lifting and carrying no more than four pounds. (R. 113.)

On May 4, 2009, Dr. Sohol conducted an independent re-examination of Plaintiff in connection with her application for workers' compensation benefits. (R. 248-50.) On examination, Dr. Sohol reported that Plaintiff's cervical spine was not tender and that both upper extremities had functional ranges of motion. (R. 249.) Her lumbar spine was tender, with spasm. (R. 250.) Straight leg raising in the supine position was 30 degrees. (*Id*.) Lumbar flexion was approximately 30 degrees and extension was 5 degrees. (*Id*.) She could not stand on her heels or toes. (*Id*.) Her knee and ankle reflexes were 1-. (*Id*.) He diagnosed her with low back pain with right-side radiculopathy. (*Id*.) He noted that she "seems like she is subjectively and objectively worse than the last visit," recommended physical therapy, and opined that she was unable to work as a nursing assistant. (*Id*.)

Dr. Shapiro submitted a partial report for his May 14, 2009 examination of Plaintiff, which indicated that she had moderate lumbar paraspinal tenderness and moderate restricted motion. (R. 206.) Reflexes were 2+ on the left and sluggish on the right side. (*Id*.) Plaintiff had diminished sensation to light touch to her left lower extremity. (*Id*.)

On June 10, 2009, Badju Boppana, M.D., a neurologist noted that Plaintiff's back pain was persistent and nonresponsive to treatment. (R. 257.) On June 23, 2009, Plaintiff underwent an MRI of her lumbar spine. (R. 258.) The MRI revealed disc herniation at the L4-L5 level with central and foraminal narrowing. (*Id*.) On June 24, 2009, Plaintiff underwent an MRI of her thoracic spine at the request of Dr. Boppana, which revealed midline and left posterolateral bulges at the T6-T7 and T7-T8 levels.[3] (R. 259.)

On July 2, 2009, Dr. Shapiro examined Plaintiff. (R. 269-70.) He noted that Plaintiff was not taking any pain medications. (R. 269.) On examination, he reported that there was moderate tenderness and restricted range of motion in Plaintiff's lumbar spine. (*Id*.) Her reflexes were 2+ on the left and sluggish on the right side. (*Id*.) Sensation was diminished to light touch on her lower extremity. (R. 270.) He diagnosed her with T6-T7 and T7-T8 small midline disc bulges, severe myofacial pain syndrome, lumbar disc bulge at L4-L5, and severe muscle spasm. (*Id*.) He opined that Plaintiff was totally disabled, but recommended vocational rehabilitation. (*Id*.)

On July 8, 2009, Dr. Bopanna reviewed the MRI results and recommended lower extremity nerve conduction and needle EMG tests, as well as continued physical therapy, and restricted activities. (R. 260.) Dr. Bopanna noted that Plaintiff was a spine injection candidate. (*Id*.) On July 13, 2009, Plaintiff visited Dr. Bopanna on an emergency basis, reporting "pain worse than any pain she has experienced since the accident." (R. 261.) On examination, he reported positive straight leg raise, severe lumbar paraspinal tenderness, weakness distally of the lower extremity, and hypoactive right Achilles reflex. (*Id*.) He diagnosed her with acute chronic

---

[3]     The MRI report refers to Plaintiff's "dorsal" spine, with bulges located at levels D6-D7 and D7-D8. (R. 259.) Based on the subsequent report and MRI interpretation from Dr. Boppana, the Court assumes that the radiologist intended to refer to Plaintiff's thoracic spine, rather than her dorsal spine. (R. 260.)

low back pain. (*Id*.) He recommended that she consult with a spinal surgeon and opined that she was "totally incapable of performing any occupation at this time." (*Id*.)

On July 15, 2009, Plaintiff underwent an MRI of her left knee, which revealed partial tears of the anterior cruciate and medial collateral ligaments and joint effusion. (R. 262.)

On August 19, 2009, Eric Crone, D.O., examined Plaintiff regarding her complaints of left knee pain. (R. 254-55.) He noted positive straight leg raise on the left with radiation to the left foot. (R. 254.) He diagnosed her with a sprain/strain of the knee and recommended continued physical therapy. (*Id*.) In a separate report, he indicated that Plaintiff was disabled. (R. 252-53.)

On August 26, 2009, Dr. Bopanna examined Plaintiff. (R. 265.) On examination, he reported antalgic gait, stance, and posture, restricted lumbar flexion and extension, and difficulty rising from a seated position. (*Id*.) He recommended an EMG of the lower extremities and a series of three lumbar epidural steroid injections. (*Id*.) He recommended that she restrict her daily activities and remain home from work. (*Id*.)

On September 22, 2009, Stanley Matthew, M.D., a physiatrist associated with Dr. Shapiro, examined Plaintiff. (R. 271-72.) He diagnosed her with myofascial pain syndrome, disc herniations at L4-L5, and severe muscle spasm. (R. 272.) He also noted that Plaintiff was a good candidate for vocational rehabilitation. (*Id*.)

On September 29, 2009, Plaintiff returned to work as a companion. (R. 32-33.)

On November 30, 2009, Dr. Boppana examined Plaintiff, finding spasm in the lower thoracic and upper and lower lumbar paraspinals with restricted lumbar flexion. (R. 266.) He reported that she suffered from restricted lumbar extension. (*Id*.) Plaintiff had antalgic gait, symmetric gait, stance, and posture. (*Id*.) Dr. Boppana opined that Plaintiff was disabled from

her past work and partially disabled from work in general.  (R. 267.)  He further opined that she was capable of part-time sedentary work.  (*Id*.)

On December 3, 2009, Lam Cu Quan, M.D., a physiatrist associated with Dr. Shapiro, examined Plaintiff.  (R. 273-74.)  On examination, he found antalgic gait favoring the right leg, lumbar tenderness, lumbar spasm, reduced range of motion, positive straight leg test on the right leg, and diminished sensation in the right lower extremity.  (R. 273.)  He opined that she was totally disabled, but noted that she was a good candidate for vocational rehabilitation.  (R. 274.)  On March 2, and March 30, 2010, Dr. Quan examined Plaintiff and reported the same findings and opinions.  (R. 277-80.)  After examining Plaintiff on June 17, 2010, Dr. Quan noted that Plaintiff was working as a companion for the elderly and was four months pregnant.  (R. 281-82.)  He opined that Plaintiff was partially disabled.  (R. 282.)

## DISCUSSION

### A.    Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. § 405(g).  A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998).  The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act."  *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982) (internal citations omitted).  The latter determination

requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999) (quotations omitted).

**B.      Disability Claims**

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also*

*Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. §§ 404.1520 and 416.920. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education and work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(e). In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002) (citing *Carroll,* 705 F. 2d at 642).

## C.      The ALJ's Decision

On April 5, 2011, the ALJ issued a decision denying Plaintiff's claims. (R. 12-28.) The ALJ followed the five-step procedure in making his determination that Plaintiff could perform

the full range of sedentary work, and, therefore, was not disabled during the closed period of March 31, 2008 to September 21, 2009. (R. 15-17.) At the first step, the ALJ determined that Plaintiff had not worked since March 31, 2008, the alleged onset date. (R. 17.) At the second step, the ALJ found the following severe impairments: joint disorder and back disorder. (*Id.*) At the third step, the ALJ concluded that Plaintiff's impairments, in combination or individually, did not meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17-19.)

At the fourth step, the ALJ found that Plaintiff had the RFC to perform the full range of sedentary work as defined in 20 CFR §§ 404.1567(a) and 416.967(a). (R. 19-23.) The ALJ concluded that Plaintiff was capable of "lifting and carrying 10 pounds occasionally and less than 10 pounds frequently; sitting six hours out of an eight hour day; standing and walking two hours out of an eight hour day; with no significant limitations in pushing and pulling with the extremities; and no significant nonexertional limitations." (R. 19.) The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effect of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (R. 22-23.) The ALJ concluded at step four that Plaintiff was unable to perform her past relevant work as a home health aide because that position required an exertional level greater than sedentary work. (R. 24.) At the fifth step, the ALJ considered Plaintiff's status as a "younger person," her education, her ability to communicate in English, and her RFC in determining that Plaintiff could perform a broad range of sedentary work readily available in the national economy. (*Id.*)

**D.    Application**

The Commissioner moves for judgment on the pleadings, seeking affirmance of the denial of Plaintiff's benefits on the grounds that the ALJ applied the correct legal standards to

determine that Plaintiff was not disabled and the factual findings are supported by substantial evidence. (*See generally* Def. Mem.; Reply Mem. of Law in Further Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Reply Mem."), Dkt. Entry No. 24.) Plaintiff cross-moves for judgment on the pleadings, contending the ALJ: (1) mischaracterized the medical evidence in the record, ignoring the more severe findings of Plaintiff's treating physicians; (2) erred at the second step by failing to classify Plaintiff's left knee impairment as severe; (3) ignored Plaintiff's obesity; (4) incorrectly applied the treating physician rule; and (5) improperly evaluated Plaintiff's credibility. (*See generally* Pl. Mem.)

The Court finds that the ALJ applied the appropriate legal standards and the decision is supported by substantial evidence. Plaintiff's arguments to the contrary are unfounded.

### 1. Medical Evidence

Plaintiff asserts that the ALJ mischaracterized the medical evidence in the record to support his denial of Plaintiff's applications. First, Plaintiff argues that the ALJ erred in stating that Dr. Zenetos' findings and opinions were out of line with those of the other treating physicians, as his severity findings and opinions were consistent with their severity findings and opinions, and the ALJ could not discredit Dr. Zenetos without ignoring the more severe findings of the other physicians. (Pl. Mem. at 4-15.) As a preliminary matter, Dr. Zenetos did not opine on Plaintiff's RFC. It appears that the ALJ (and Plaintiff) inaccurately referred to a portion of Dr. Zenetos' report in which he recorded Plaintiff's subjective complaints as Dr. Zenetos' RFC assessment. (R. 242.) The record is clear that Dr. Zenetos never opined as to her RFC. (R. 242-44.) Indeed, his report is void of any opinion as to the degree of her disability (*Id*.). Although, subsequently, he submitted a report to her employer's workers' compensation carrier indicating

that she was totally disabled for the period of October 28, 2008 through November 19, 2008.  (R. 244.)

This misstatement regarding Dr. Zenetos' report does not merit remand because this error did not involve the ALJ overlooking evidence that was favorable to the Plaintiff.  Remanding this action to the ALJ to clarify that Dr. Zenetos had summarized Plaintiff's complaints, rather than opined as to her RFC, would not change the ALJ's decision because, as set forth below, the ALJ assigned "lesser weight" to Dr. Zenetos' opinion, and did not err in doing so.  Under these circumstances, remand is unnecessary.  *See Zabala v. Astrue*, 595 F. 3d 402, 409 (2d Cir. 2010) (declining to remand even though the ALJ failed to satisfy the treating physician rule as the medical record that the ALJ overlooked would not have altered the ALJ's disability determination (quoting *Johnson v. Bowen*, 817 F. 2d 983, 986 (2d Cir. 1987))); *see also Halloran v. Barnhart*, 362 F. 3d 28, 32-33 (2d Cir. 2004) (declining to remand even when the ALJ failed to provide "good reasons" for the weight given to a treating physician's opinion).

As to the substance of Plaintiff's argument, it is notable that none of her treating physicians provided an RFC assessment.  Thus, this is not a situation in which the ALJ discredited one physician's opinion as to Plaintiff's RFC over another physician's opinion.  Moreover, the opinions of Plaintiff's treating physicians as to the degree of her disability were inconsistent throughout the entire closed period for which she seeks benefits.  (R. 178-80 ("temporarily partially disabled"), 174-75, 261, 270, 273 ("totally disabled"), 176-77, 195, 197, 216 ("temporarily totally disabled"), 190, 219-20 ("permanent partial moderate disability"), 253 ("disabled"), 267, 282 ("partially disabled").)

Second, Plaintiff asserts that the ALJ erred in stating that Dr. Sohal's findings supported the conclusion that Plaintiff was not disabled because, to make that finding, the ALJ ignored Dr.

Sohol's findings and opinions after his second examination of Plaintiff, which indicated that Plaintiff's condition was deteriorating. (Pl. Mem. at 15-16.) Plaintiff correctly notes that, at the second examination, Dr. Sohol indicated that Plaintiff was "subjectively and objectively worse than the [first] visit" and that he opined that she would be unable to work as a nursing assistant. (R. 250.) However, he made no findings as to whether she would be able to perform work at lower exertion levels, particularly sedentary work. Thus, consideration of these findings would not change the ALJ's ultimate decision as to Plaintiff's disability status.

### 2. Left Knee Impairment

Plaintiff contends that the ALJ erred at step two because he should have concluded that Plaintiff's left knee impairment was severe. (Pl. Mem. at 16-18.) The ALJ found that Plaintiff suffered from two severe impairments, a joint disorder and a back disorder. (R. 17.) Knee impairments fall within the broad category of joint disorders. *See* Listing 1.02 of 20 C.F.R. Pt. 404, Subpt. P, App. 1. Thus, in evaluating Plaintiff's knee impairment as a joint disorder, the ALJ did not ignore evidence of her left knee impairment. Moreover, it is clear from the ALJ's analysis at step three, in which he determined that Plaintiff's joint disorder of her knee did not meet or equal the severity of Listing 1.02, that the ALJ evaluated Plaintiff's left knee as a joint disorder as step two. He simply failed to specify the joint to which he was referring. Contrary to Plaintiff's assertion, the ALJ's "vague" use of the term "joint disorder" did not relate to her spinal disorders as he evaluated those disorders separately as a "Back Disorder." (R. 18-19.) Accordingly, the ALJ's analysis at the second step does not merit remand because the ALJ did what Plaintiff seeks—he found two severe impairments, one of which was a knee impairment.

### 3.    Plaintiff's Obesity

Plaintiff contends that the ALJ neglected to consider her obesity.  (Pl. Mem. at 18-19.)  The ALJ considered all of the medical records Plaintiff submitted.  Two of these records mention Plaintiff's height and weight.  (R. 184, 187.)  None of Plaintiff's physicians (or any of the examining physicians) diagnosed Plaintiff with obesity or noted that it impacted her ability in any manner.  Similarly, Plaintiff's DIB and SSI applications, as well as her testimony, are void of any mention of obesity or its impact on her ability to work.  Under similar circumstances, the Second Circuit has declined to remand for additional proceedings.  *See Britt v. Astrue*, 486 Fed. App'x 161, 163 (2d Cir. 2012) (summary order) (declining remand "because [the plaintiff] did not furnish the ALJ with any medical evidence showing how [obesity] limited his ability to work").  Accordingly, Plaintiff's request to remand this action to the ALJ for consideration of her obesity is denied.

### 4.    Treating Physician Rule

Plaintiff contends that the ALJ violated the treating physician rule by assigning "some weight" to Dr. Wert's opinion as his opinion was contrary to the substantial evidence in the record.  (Pl. Mem. at 19-20.)  Additionally, the Court construes Plaintiff's motion to raise the argument that the ALJ erred in assigning the opinion of Dr. Zenetos "lesser weight."

With respect to "the nature and severity of [a claimant's] impairment(s)," 20 C.F.R. § 404.1527(d)(2), "[t]he SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."  *Green-Younger v. Barnhart*, 335 F. 3d 99, 106 (2d Cir. 2003).  A claimant's treating physician is one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual."  *Schisler v. Bowen*, 851 F. 2d

43, 46 (2d Cir. 1988). A treating physician's medical opinion regarding the nature and severity of a claimant's impairment is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record." *Burgess v. Astrue*, 537 F. 3d 117, 128 (2d Cir. 2008) (quotation marks and alteration omitted). The Second Circuit has noted that, "[w]hile the opinions of a treating physician deserve special respect . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Lazore v. Astrue*, 443 F. App'x 650, 652 (2d Cir. 2011) (quoting *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002)). Where a treating source's opinion is not given controlling weight, the proper weight accorded by the ALJ depends upon several factors, including: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Soc. Sec.*, 143 F. 3d 115, 118 (2d Cir. 1998); *see also* 20 C.F.R. § 404.1527(c)(2).

Turning to this case, the ALJ discussed the objective medical evidence, including clinical findings of Drs. Bakshi, Shapiro, Paddu, Bopanna, Crone, Sohal, Wert, and Zenetos, as well as the results of diagnostic testing. (R. 20-23.) He noted that Plaintiff treated conservatively and that several of her physicians indicated that she was a good candidate for vocational rehabilitation. (R. 23.) In determining that Plaintiff could perform sedentary work, he evaluated the opinions of her physicians, explaining that:

> The only vocationally relevant treating evidence was provided by Dr. Zenetos who offers parameters of limitations which are not consistent with the mild findings in the clinical diagnostic testing of the mild findings of other treating physicians. Dr. Shapiro, Dr. Mathew, Dr. Boppana and Dr. Quan had a treatment relationship with the claimant longer than the one month from mid-October to

mid-November 2008 span of treatment undertaken by Dr. Zenetos. All these physicians opined that the claimant was a good candidate for vocational retraining or that the claimant was capable of sedentary work. Accordingly, Dr. Zenetos is afforded lesser weight than the other aforementioned sources. For similar reasons, the material from Dr. Bakshi, Dr. Paddu, and Dr. Crone is also afforded great weight. The opinions of Dr. Wert and Dr. Sohal are given some weight, insofar as their clinical findings were consistent with the medical evidence in the record.

In sum, the above residual functional capacity assessment is supported by the State agency material and the treating sources, Dr. Shapiro, Dr. Mathew, Dr. Quan, and Dr. Boppana. The only source which purports to controvert this evidence from Dr. Zenetos is not adequately supported by the remainder of the treating sources or the clinical diagnostic evidence.

(R. 23.) Additionally, he assigned little weight to the disability findings her physicians made regarding her workers' compensation claim, explaining that he was not bound by those findings as that compensation program defines the term "disability" differently from the Act. (*Id*.)

The ALJ did not err in making these findings. The ALJ assigned "great weight" to the opinions of treating physicians Drs. Shapiro, Mathew, Boppana and Quan, Bakshi, and Paddu. (R. 23.) As the ALJ acknowledged, these physicians had long-term treatment relationships with Plaintiff. (*Id*.) Although they did not opine as to Plaintiff's RFC, it is clear that the ALJ relied upon their clinical findings in reaching his decision. The ALJ also acknowledged that their clinical findings generally were consistent. (*Id*.) The ALJ assigned "lesser weight" to Dr. Zeneotos' report because his findings were inconsistent with the record as a whole and he treated Plaintiff for just one month at the time he evaluated her. (*Id*.) The ALJ is entitled to make such a determination.

Furthermore, the substantial evidence supports his decision. Plaintiff treated conservatively with physical therapy. (R. 180, 195-96, 214, 216, 218-20.) Plaintiff stated that she was able to prepare her own meals, handle her finances, and travel by car to and from

Virginia.  (R. 40, 140, 142.)   There were periods of time in which she indicated that her impairments had improved with physical therapy.  (R. 194, 196, 213, 215, 217, 221.)  Plaintiff's treating physicians indicated that she was a good candidate for vocational rehabilitation.  (R. 221, 223.)  There was no opinion as to her RFC that was contrary to the ALJ's assessment.

Finally, the decision of whether an individual is disabled within the meaning of the Act is left to the ALJ.  The ALJ is not required to assign any weight to a treating physician's disability finding made in connection with a different compensation program, such as workers' compensation.  *See* 20 C.F.R. § 416.904 (explaining that an ALJ is not bound by the decision of any nongovernmental agency or other governmental agency concerning a claimant's disability status); *see also Rosado v. Shalala*, 868 F. Supp. 471, 473 (E.D.N.Y. 1994) (holding that the ALJ did not err in disregarding the treating physicians' disability determinations as they arose in the context of a workers' compensation claim).  Thus, the ALJ did not err in assigning "little weight" to the disability determinations of plaintiff's treating physicians for purposes of her workers' compensation claim.

### 5.    Plaintiff's Credibility

The Second Circuit recognizes that subjective allegations of pain may serve as a basis for establishing disability.  *See Taylor v. Barnhart*, 83 F. App'x 347, 350 (2d Cir. 2003) (summary order) (citing *Marcus v. Califano*, 615 F. 2d 23, 27 (2d Cir. 1979)).  However, the ALJ is afforded discretion to assess the credibility of a claimant and is not "required to credit [Plaintiff's] testimony about the severity of her pain and the functional limitations it caused." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order)).  In determining Plaintiff's credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations.  *See Peck v.*

*Astrue*, 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010). First, the ALJ must consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b); S.S.R. 96-7p. Second, if the ALJ finds that the individual suffers from a medically determinable impairment that reasonably could be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's ability to work. 20 C.F.R. § 404.1529(c). When the ALJ finds that the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

"If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, [she] must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Correale-Englehart*, 687 F. Supp. 2d at 435. When the ALJ neglects to discuss at length her credibility determination with sufficient detail to permit the reviewing court to determine whether there are legitimate reasons for the ALJ's disbelief and whether her decision is supported by substantial evidence, remand is appropriate. *Id.* at 435-36; *see also Grosse v. Comm'r of Soc. Sec.*, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding the ALJ

committed legal error by failing to apply factors two through seven); *Valet v. Astrue*, 2012 WL 194970, at \*22 (E.D.N.Y. Jan. 23, 2012) (remanding because the ALJ failed to address all seven factors).

Turning to the instant action, Plaintiff contends that the Commissioner mischaracterized Plaintiff's testimony to improperly attack her credibility. (Pl. Mem. at 21-22.) Regardless of the Commissioner's characterization of Plaintiff's testimony, the ALJ properly discredited Plaintiff's subjective complaints of pain and symptoms. The ALJ noted that the substantial evidence indicated that she was able to perform sedentary work during the period in question. (R. 23.) The ALJ discussed the medical evidence in depth (as discussed above) and found that there was insufficient medical evidence to support Plaintiff's subjective complaints to the extent that her complaints were inconsistent with the RFC. The ALJ also noted the Plaintiff's daily activities, age, and conservative treatment discredited Plaintiff. The substantial evidence, as discussed in detail above, supports the ALJ's credibility finding.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted. Plaintiff's cross-motion for judgment on the pleadings is denied and this appeal is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
     September 12, 2014

_____/s/_____
DORA L. IRIZARRY
United States District Judge
